## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHASE BANK USA, N.A., | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOURCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Chase Bank USA, N.A. ("Chase"), complains against Defendant Source, Inc. ("Source"), as follows:

### INTRODUCTION

1.     This is an action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, 35 U.S.C. § 1 *et. seq.*, seeking a declaration that Chase does not infringe any valid and enforceable claims of U.S. Patent No. RE36,116 (the "'116 patent").

### PARTIES

2.     Chase is a national association with its main office, as set forth in its articles of association, located at 200 White Clay Center Drive, Newark, Delaware, 19711.

3.     Source is a Delaware corporation and, on information and belief, has its principal offices in Newhall, California.  On information and belief, Source owns the rights to the '116 patent, whose infringement is challenged in this action.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over Chase's claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

5.    This Court has personal jurisdiction over Source because Source is a citizen of Delaware due to its incorporation in Delaware.

6.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b).

## GENERAL ALLEGATIONS

7.    On information and belief, Source owns the rights to the '116 patent. A copy of the patent is attached as Exhibit 1.

8.    This action is properly brought under 28 U.S.C. § 2201 because there is an actual controversy whether Chase infringes any claims of the '116 patent. Specifically, on or about February 21, 2008, Source caused a letter (the "Letter") to be sent to JPMorgan Chase & Co. ("JPMorgan"), the ultimate corporate parent of Chase, noting that an action had been filed in the Eastern District of Texas asserting that the Chase Freedom Credit Card (the "Card") infringed the '116 patent (the "Texas Suit"). Copies of the Letter and the Complaint from the Texas Suit are attached as Exhibits 2 and 3, respectively.

9.    The Texas Suit improperly named as a defendant "JPMorgan Chase & Co. ... a national banking association." No such entity exists; JPMorgan Chase & Co. is a financial holding company and is not a national banking association. The other most similarly named affiliated entity is JPMorgan Chase Bank, N.A. Neither JPMorgan Chase & Co. nor JPMorgan Chase Bank, N.A. owns or operates the Card. The Terms and Conditions of the Card clearly indicate that the Card is issued by Chase. JPMorgan's Annual Report also lists Chase as JPMorgan's credit-card issuing bank.

- 2 -

10.    Chase, which is a separate entity from JPMorgan, owns and operates the Card, and thus has a reasonable apprehension of being sued for infringement of the '116 patent.

11.    Source failed to effect service of its Complaint in the Texas Suit within 120 days of filing as required under Federal Rule of Civil Procedure 4(m). Upon the expiration of 120 days, JPMorgan moved to dismiss the Complaint for Source's failure to effect proper service. Source responded by effecting service on JPMorgan and claiming in an opposition to JPMorgan's motion that Source had good cause for its delay because it was pursuing settlement with other defendants and attempting to narrow the issues.

12.    Despite Source's assertion that it was diligently pursuing settlements, since its initial demand letter, Source has not contacted JPMorgan (or Chase) for any attempt at settlement or narrowing of disputed issues of fact or law. On information and belief, Source has not pursued settlement even when contacted to do so by another defendant.

13.    Nevertheless, Source continues to assert that the Card infringes the claims of the '116 patent. Based on Source's actions and Chase's ownership and operation of the Card, there is an actual, immediate and justiciable controversy between Chase and Source as to the infringement of the '116 patent. Chase is entitled to the declaratory judgment that it seeks in order to resolve the legal and factual questions raised by Source and to afford relief from the uncertainty and controversy that Source's accusations have precipitated.

### CLAIM FOR RELIEF

14.    Chase repeats each and every allegation of paragraphs 1-13 as if set forth here in full.

15.    Chase has not infringed, directly or indirectly, any claim of the '116 patent.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chase respectfully requests that this Court:

a)      Adjudge that Chase does not infringe on any claims of U.S. Patent No. RE36,116;

b)      Award Chase its costs and expenses of this litigation, including reasonable

attorneys' fees and disbursements pursuant to 35 U.S.C. § 285; and

c)      Award such other relief as the Court deems reasonable and just under the

circumstances.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Mark G. Matuschak
WILMER CUTLER PICKERING          By: _____
    HALE AND DORR LLP
60 State Street                                       Philip A. Rovner (#3215)
Boston, MA  02109                               Hercules Plaza
 (617) 526-6559                                    P.O. Box 951
                                                          Wilmington, DE 19899-0951
                                                          (302) 984-6000
Dated:  August 20, 2008                       provner@potteranderson.com
879303

*Attorney for Plaintiff*
*Chase Bank USA, N.A.*

# EXHIBIT 1



US00RE36116E

# United States Patent [19]

## McCarthy

[11] E    Patent Number:    **Re. 36,116**

[45] Reissued    Date of Patent:    *Feb. 23, 1999

[54] **CENTRALIZED CONSUMER CASH VALUE ACCUMULATION SYSTEM FOR MULTIPLE MERCHANTS**

[76] Inventor: **Patrick D. McCarthy**, 104 Tristan Rd., Louisville, Ky. 40222

[*] Notice: The portion of the term of this patent subsequent to Jul. 10, 2007, has been disclaimed.

The term of this patent shall not extend beyond the expiration date of Pat. No. 4,941,090.

[21] Appl. No.: **602,255**

[22] Filed: **Feb. 15, 1996**

### Related U.S. Patent Documents

Reissue of:
[64] Patent No.:       5,287,268
     Issued:          Feb. 15, 1994
     Appl. No.:       976,965
     Filed:           Nov. 16, 1992

U.S. Applications:
[63] Continuation of Ser. No. 797,401, Nov. 26, 1991, Pat. No. 5,202,826, which is a continuation of Ser. No. 510,446, Apr. 18, 1990, Pat. No. 5,117,355, which is a continuation-in-part of Ser. No. 303,319, Jan. 27, 1989, Pat. No. 4,941,090.

[51] Int. Cl.$^6$ ..................................................... G06F 17/60

[52] U.S. Cl. ................................. 705/16; 705/14; 705/17; 705/18

[58] Field of Search ............................ 364/405; 395/214; 705/14, 16, 17, 18

[56]        **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,360,872 | 11/1982 | Suzuki et al. . |
| 4,594,663 | 6/1986 | Nagata et al. . |
| 4,669,730 | 6/1987 | Small . |
| 4,673,802 | 6/1987 | Ohmae et al. . |
| 4,722,054 | 1/1988 | Yorozu et al. . |
| 4,750,119 | 6/1988 | Cohen et al. . |
| 4,941,090 | 7/1990 | McCarthy . |
| 5,025,372 | 6/1991 | Burton et al. . |
| 5,117,355 | 5/1992 | McCarthy . |
| 5,202,826 | 4/1993 | McCarthy . |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 047560 | 4/1980 | Japan | G06F 15/21 |

### OTHER PUBLICATIONS

S&H Motivation and Saffer–USA Advertising Inc. Announce New Joint Venture To Develop and Market A Computerized "Frequent Shopper's Program" for Retail Chains., PR Newswire, Mar. 9, 1987.

*Primary Examiner*—Gail O. Hayes
*Assistant Examiner*—William N. Hughet
*Attorney, Agent, or Firm*—Wood,Herron&Evans, L.L.P.

[57]        **ABSTRACT**

A centralized system of accumulating cash value for consumers based upon point-of-sale transactions with multiple merchants is disclosed wherein for each transaction, the consumer's account number (such as the Social Security number) which may be different from the consumer's credit card account number, for example, is transmitted to a central system along with data identifying the merchant and a credit value for the transaction. The credit value may be based upon predetermined incentives associated with the transaction such as coupons, rebates or discounts, and/or upon a credit rate determined by the merchant applied to the amount of the transaction. At the central location, a cash value for that consumer is incremented by the credit value and a bill value for that merchant is similarly incremented. Periodically, the merchants are billed for the accumulated bill value or credited for any third party incentive amounts confirmed at the central location. Also, at selected intervals, consumers are given access to their respective accumulated cash values by either a check in that amount or through a funds dispensing electronic terminal access or the like.

**35 Claims, 1 Drawing Sheet**



U.S. Patent          Feb. 23, 1999          Re. 36,116



Re. 36,116

1

# CENTRALIZED CONSUMER CASH VALUE ACCUMULATION SYSTEM FOR MULTIPLE MERCHANTS

Matter enclosed in heavy brackets [ ] appears in the original patent but forms no part of this reissue specification; matter printed in italics indicates the additions made by reissue.

## RELATED APPLICATIONS

This application is a continuation of my application Ser. No. 07/797,401, filed Nov. 26, 1991, *now U.S. Pat No. 5,202,826*, which is a continuation of my application Ser. No. 07/510,446, filed Apr. 18, 1990 (now U.S. Pat. No. 5,117,355), which is a [continuation] *continuation-in-part* of my application Ser. No. 07/303,319, filed Jan. 27, 1989, now U.S. Pat. No. 4,941,090.

## FIELD OF THE INVENTION

The present invention relates to a centralized system of accumulating cash value for consumers based upon point-of-sale transactions by which credit incentives may be provided to consumers without reducing a merchant's current cash flow. More specifically, the present invention relates to such a system in which each participating merchant may set its own credit rate for cash value to accumulate on each sale irrespective of a rate set by any other merchant and independent of a central authority.

## SUMMARY OF THE INVENTION

In accordance with the principles of the present invention, a consumer, upon making a purchase from a merchant, will obtain a credit value equal to a portion of the amount of the purchase. The portion which is to be credited is determined at the point-of-sale from a rate which may be selected by that merchant irrespective of the rate selected by any other merchant and independent of a central authority. Alternatively, the rate may be based in whole or in part upon a preassigned rebate or coupon value such as from a third party, or a combination of preassigned and merchant selected factors. The credit value is then transmitted to a central system communicating with all of the participating merchants, whereat the credit value is added to a cash value maintained for that consumer's account. At preselected intervals, such as on the occasion of the consumer's birthday, that consumer is given access to cash in an amount equal to the accumulated cash value. The credit value may also be added to a bill value maintained in an account for the involved merchant. The merchant may be periodically billed for the accumulated bill value amount where consumer credit values are discounts or rebates from the merchant. Alternatively, where credit values are based upon preassigned rebate or coupon values from third parties, the bill value may be utilized to track compliance by the merchant and all of the bill values utilized for billing the third parties. To reduce security problems, the consumer provides the merchant at the point-of-sale only the consumer's account number and, perhaps, birthdate. To avoid necessity for issuing account numbers to consumers, the account number may be the consumer's Social Security number. This information may be encoded in a magnetic strip of a plastic card which is inserted into a reader at the point-of-sale. A credit value is then determined based either upon a coupon or rebate value amount input by the merchant at the point-of-sale and/or upon the amount of the sale and the credit rate as input by the merchant. The determined credit value is then

2

transmitted to the central system along with the consumer's account number and, perhaps, birthdate whereat the credit value is added to the cash value maintained in the consumer account associated with that unique account number and, perhaps, the birthdate.

While groups of consumers may share a common birthdate (month and day, for example) Social Security numbers are unique. Hence, Social Security numbers are preferably utilized as consumer account numbers to access the appropriate account to increase the cash value according to the credit value, while birthdates may optionally be used to verify that the account is appropriate. On the other hand, for giving the consumer access money, all accounts sharing a selected birthdate may be accessed and individually an authorization issued to allow each consumer to access cash in the amount of the accumulated cash value in that consumer's account. Preferably, the consumer may then access the money through an electronic terminal for dispensing funds such as a bank terminal or the like which communicates with the central system to issue funds when the authorization is present. Alternatively, the central system may issue checks to the consumers. In this way, consumers build up cash value by buying products from participating merchants independent of how that product is paid for, such as by cash, check or credit card. Further, utilization of the system enables merchants to attract consumers to their place of business with the promise of subsequent cash rebates based upon purchases by that consumer. And, as each merchant may independently select the rate at which credit is earned, and independent of the central system, merchants are free to use varying levels of incentive depending upon the type of product (or service) involved and other economic or commercial considerations.

Yet further, because the information related to credits and accounts is handled at a centralized system, the merchants are freed from handling the paperwork and/or devoting valuable computer time and space and operating personnel to the management of the cash value accumulating system. Security is also enhanced because the myriad of sales personnel and other employees of the various merchants will not have "exit" access to the consumer accounts (i.e., to obtain authorization to access funds or have checks issued).

These and other objects and advantages of the present invention shall be made apparent from the accompanying drawing and the description thereof.

## BRIEF DESCRIPTION OF THE DRAWING

The accompanying drawing, which is incorporated in and constitutes a part of this specification, illustrates an embodiment of the invention and, together with a general description of the invention given above, and the detailed description of an embodiment given below, serves to explain the principles of the invention.

The FIGURE is a block diagram of an exemplary consumer cash value accumulating system in accordance with the principles of the present invention.

## DETAILED DESCRIPTION OF THE DRAWING

With reference to the FIGURE, there is shown a block diagram of an exemplary customer cash value accumulating system 10 having a central system 12 and a plurality of merchant locations 14, in this case four although there could be more or fewer than four. Each merchant location 14 includes at least one computer unit 16 such as a microprocessor and associated peripherals which communicates, over a common bus 18, for example, with a consumer data input

Re. 36,116

3

device 20, a transaction data input device 22, a memory 24 and an input/output (I/O) device 26.

Consumer data input device 20 is located at the point-of-sale to a consumer of merchandise or services from a selected merchant. Device 20 may be a keyboard into which a consumer may enter the consumer's account number and, if required, date of birth. In a preferred embodiment, the consumer s Social Security number is used as the account number. Alternatively, device 20 may take another form such as a magnetic card reader adapted to read the magnetic stripe on a plastic card inserted into the reader. In the latter event, the magnetic stripe would be encoded with the consumer's account number and, if required, date of birth. Where a plastic card is used, device 20 may also include a keyboard for entry of a personal identification number (PIN) by which to verify against a code stored in the magnetic stripe that the card is being used by the appropriate individual at the point-of-sale.

Transaction data input device 22 is also located at the point-of-sale and typically would be a keyboard or the like by which the sales clerk, for example, would enter the dollar amount of the merchandise purchased by the consumer and, if appropriate, any rebate or coupon values. Device 22 could be the cash register. Alternatively, device 20 and device 22 could share a single keyboard.

The consumer data and transaction data entered through devices 20, 22 may be temporarily stored in memory 24. Memory 24 may also include merchant data along with software to direct operation of computer 16 as will be described. The merchant data includes at least a merchant code number to identify that merchant. Merchant data may also include information indicating the time or location of the sale and/or the identification of the sales clerk, for example. Importantly, where the system is to provide an incentive based upon discounts offered by that merchant, memory 24 also preferably includes a credit rate selected by that merchant at which cash value is to be accumulated by the consumer for purchases from that merchant. The credit rate for one merchant is preferably selected by that merchant and not by any other merchant or the central system.

As is well understood, computer 16 will function in accordance with the operating program stored in memory 24. To this end, computer 16 may verify that the PIN number matches a code on the card to verify that the user is authorized on that card. Computer 16 will also preferably determine a credit value for the transaction based upon the transaction data input and the credit rate (e.g., purchase of $25.00 and credit rate of 0.10=$2.50 credit value) and will output to the central system 12, through I/O device 26 and communication line 30, the consumer's account number and birthdate if utilized, the credit value for that transaction and the merchant data. The credit value may additionally or alternatively be determined based upon a "cents-off" coupon or an advertised rebate or discount amount from a third party, plus any added incentive amount selected by the merchant. Thus, rather than have the merchant reduce cash flow by accepting less than the full amount of the sale from the consumer, the consumer will pay the full amount and build up a credit value for subsequent redemption in accordance with the invention. For example, the consumer may provide a "cents off" coupon at the point-of-sale and, instead of receiving an immediate cash return, the consumer will obtain as a credit value the amount of the coupon, plus the credit rate amount or other incentive, if any, in memory 24 selected by the merchant to be added thereto as an incentive. Similarly, a rebate or discount amount may be utilized to determine the credit value. The value of the coupon, rebate

4

or discount may be input by the sales clerk at the point-of-sale or may be stored in memory 24 as appropriate for determining the credit value to be output through I/O device 26.

Central system 12 communicates with line 30 through its own I/O device 40. I/O devices 26 and 40 may be modems and line 30 a telephone line, for example. Further, each merchant location 14 may communicate with central system 12 either separately through I/O device 40 or collectively through multiple I/O devices 40 (only one shown) as is well understood.

Data received by central system 12 through I/O device 40 is coupled to common bus 42 which permits communication between I/O device 40, bill printer 44, access authorization unit 46, memory 48, consumer accounts memory 50, merchants account memory 52 and computer 54 which may also be a microprocessor and associated peripherals. Consumer accounts memory 50 includes a plurality of consumer accounts and, for each such account, includes at least an account number segment unique to that account and consumer, and a cash value segment. Each account may also include a birthdate segment applicable to that consumer. Alternatively, memory 50 could include a look-up table of all account numbers associated with a respective birthdate. Similarly, merchant account memory 52 includes a plurality of merchant accounts and, for each such account, includes at least a merchant code number segment unique to that account and merchant and a bill value segment.

The data received at I/O device 40 is sorted out by computer 54 under control of an operation program stored in memory 48. Specifically, the account number portion of the received data is examined to locate the consumer account in memory 50 having the same account number segment. The birthdate portion of the received data may be used to verify that the account is proper, i.e., it includes the same birthdate segment or is associated with that birthdate in the look-up table. Once the proper account is found, the cash value segment is incremented in relation to the amount of the credit value data received from the merchant for that transaction, such as in a one-to-one correspondence or other desired relationship. The received merchant data is similarly employed to locate the appropriate merchant account in memory 52. The bill value segment is then similarly incremented in relation to the amount of the credit value data received from that merchant. Additional merchant data segments may be included to provide a listing of transactions for each merchant when the bill is printed as will be described.

Periodically, such as once a month, each merchant account in memory 52 is examined. Where the system is based upon merchant incentives, the merchant is to be billed therefore. Accordingly, under such circumstances, if the bill value for any particular merchant is greater than zero, a bill is generated at printer 44 and the bill value for that merchant reset to zero. The bills printed by printer 44 may then be mailed to the respective merchants. Each of the bills may also include an added fee from the operator of central system 12 and may further include a list of transactions for that merchant if that information was stored in memory 52. Alternatively, or additionally, any coupon, rebate or discount values offered by a third party such as a manufacturer and submitted to the central system by the merchant may be applied against the bill value as a credit to reduce the bill value amount in memory 52 associated with that merchant's account such as where the central location acts as the clearing house for such incentives. In this way, compliance by the merchant with the terms of the third party's coupon

Re. 36,116

5

or rebate program may be monitored. Under such a circumstance, memory 52 may further include third party account(s) in which all verified rebates or discounts are accumulated as third party bill values, and the third party (ies) periodically billed therefor whereby the clearing house may then obtain the credited bill value amount from the third party that provided the coupon or rebate or other such incentive.

Also, at selected times, each consumer account in memory 50 having a selected birthdate segment, for example, may be examined. For each such account, if the cash value is greater than zero, the amount of the cash value is provided to access authorization unit 46 along with at least the consumer's account number. The cash value in the consumer account is then reset to zero. In unit 46, which may be a memory, a consumer's access account is established having the consumer account number and an access value equal to the cash value. The access value may also include any access value not previously withdrawn by that consumer. Unit 46 may communicate with one or more electronic terminals adapted to dispense funds represented as at 60 such as the type used by individuals to access bank accounts to obtain or deposit funds. The consumer may enter a plastic card bearing the account number (and, if required, birthdate) in a terminal 60 which after verification against a PIN number entered by the consumer, for example, will access the consumer's access account in unit 46 and dispense funds up to the amount of the access value in that account. The amount of the access value will be reduced accordingly. Alternatively, unit 46 could be adapted to communicate with banking institutions for wire transfer or the like of funds directly to a consumer's bank account at selected intervals. As another alternative, unit 46 could be a check printer which prints checks for each consumer as appropriate. The checks so-printed may then be mailed to the respective consumers.

Preferably, the consumer accounts are examined and access to funds authorized at or near the time of the month and day of the consumer's birthdate. Thus, for example, each day, all accounts having that date as a birthdate segment will be examined and access to funds authorized. The examination could be on some other basis. For example, all accounts having birthdate segments for several consecutive days may be examined a week ahead of time so that access authorizations are provided or checks issued once a week. Other daily, weekly, biweekly or monthly schedules may be employed.

Although shown separately, where unit 46 is a printer, printers 44 and 46 could be the same printer. Printer 44 could alternatively be adapted to communicate with appropriate bank or like accounts for wire transfer or the like of funds from a merchant's or third party's account for collection and payment of the bill value and other fees. Although electronic, this alternative may still be deemed to be generating a bill within the scope of the invention. Also, consumer accounts memory 50 and merchant accounts memory 52 are shown separately but may be combined into one memory and may even form part of memory 48. Further, unit 46 may also utilize memory 48.

Data from each merchant location 14 may be transmitted to central station 12 concurrent with the point-of-sale transaction, or the memory 24 may temporarily store the data associated with one or more such transactions and then transmit the stored data to the central system at another time. The latter may be preferred so as not to unduly tie-up telephone lines or to take advantage of lower nighttime telephone rates, for example. Further, subsequent transmis-

6

sion may be under control of central system 12 and, thus, occur at a time or times most appropriate for central system 12 to spread out its tasks over a period of time.

Each merchant may have several points-of-sale each equipped with consumer and transaction data input devices 20, 22. Memory 24, computer unit 16 and I/O device 26 for each merchant location may be replicated at each point-of-sale. Preferably, however, only the input devices 20, 22 are so replicated for any merchant such that only one computer 16 associated with that merchant location is necessary.

In operation, when a consumer makes a purchase, the consumer's Social Security number and perhaps birthdate are entered along with the amount of the purchase at the point-of-sale. Where a plastic card with a magnetic stripe is used for entry of the consumer data, a PIN code is also entered and verified against a code stored on the card. A credit value for that transaction is then determined based upon the credit rate stored in memory 24 as selected by that merchant, if any, and the dollar or sales amount of the particular transaction involved and/or the value of any coupon, rebate or other discount. Subsequently, the consumer data, merchant data and credit value are transmitted to the central system whereat the cash value in the consumer account having the appropriate account or Social Security number and perhaps birthdate segments is incremented as say by the amount of the credit value. Similarly, at the central system, the bill value in the merchant account having the appropriate merchant code number segment is also incremented such as by the amount of the credit value. When a third party incentive is confirmed, the merchant's bill value will be reduced and a bill value for the third party increased and collection thereon undertaken. Periodically, such as monthly, the merchant bill value amounts represented by the coupon, rebate or discount amounts offered by the merchants are billed to the merchants and that portion of the bill value amount is subtracted from that merchant's account. Similarly, at selected intervals all consumers having one or more selected common birthdates, for example, are provided access to funds in the amount of the cash value shown in the consumer accounts associated with those individuals and the cash values then reset to zero. Such access may be by authorized access to an access account or by checks issued directly to that consumer, for example.

By virtue of the foregoing there is thus provided a centralized consumer cash value accumulation system wherein multiple merchants may participate and provide consumer incentives without reducing current cash flow and, optionally, with each merchant selecting its own rate at which consumers accumulate cash value incentives for their purchases. Furthermore, the system thus provided is secure in that access to money value is only at or through the central station.

While the present invention has been illustrated by description of an embodiment and while the illustrative embodiment has been described in considerable detail, it is not the intention of the applicant to restrict or in any way limit the scope of the appended claims to such detail. Additional advantages and modifications will readily appear to those skilled in the art. The invention in its broader aspects is therefore not limited to the specific details, representative apparatus and method, and illustrative example shown and described. Accordingly, departures may be made from such details without departing from the spirit or scope of applicant's general inventive concept.

What is claimed is:

1. A method of consumer cash value accumulation based upon point-of-sale transactions, *each having a purchase amount*, between consumers and merchants, the method comprising:

Re. 36,116

<table>
<tr><td>7</td><td>8</td></tr>
</table>

a. at the point-of-sale, obtaining from the consumer an account number unique to the consumer;

b. at a merchant location, determining a credit value for the transaction *from a merchant-specific credit rate and the purchase amount*;

c. electronically providing, for each transaction, from the merchant location to a central system the consumer's account number and the credit value;

d. for each transaction, accumulating, at the central system, cash value in a consumer account associated with that consumer's account number by increasing the cash value in that consumer account in relation to the credit value.

2. The method of claim 1, which further comprises selectively providing to a plurality of the consumers access to funds in their respective consumer accounts, such access being based upon the cash value in that consumer account.

3. The method of claim 1, wherein the consumer account number is independent of how the consumer pays for the transaction.

4. The method of claim 1, wherein the step of determining a credit value for the transaction is based upon the amount of the transaction and the applicable credit rate determined by the merchant.

5. The method of claim 1, wherein access to funds is provided by issuing a check in an amount equal to the cash value in that consumer account.

6. The method of claim 1 wherein, for each transaction, merchant data associated with the merchant is electronically transmitted to the central system along with the consumer's account number and the credit value, the method further comprising:

for each transaction, accumulating, at the central system, bill value in a merchant

account associated with that merchant's merchant data by increasing the bill value in that merchant's account in relation to the credit value.

7. The method of claim 6 further comprising:

generating for each merchant account a bill in an amount based upon the bill value in that merchant account.

8. A centralized consumer cash value system for [trans-action] *transactions, each having a purchase amount,* between consumers and multiple merchants comprising:

at each merchant location at least:

consumer data input means at the point-of-sale for inputting an account number;

processor means for determining a credit value for the transaction *from a merchant-specific credit rate and the purchase amount*; and

first communication means for electronically transmitting to the central system the consumer's account number and the credit value related to each transaction; and

at a central location a central system having at least:

second communication means for electronically receiving the consumer's account number and the credit value related to each transaction; and

consumer account memory means for storing cash values for a plurality of consumer accounts, each consumer account being associated with a respective, unique account number;

processor means for incrementing the cash value in a consumer account associated with a received consumer account number in relation to the received credit value.

9. The system of claim 8, which further comprises unit means for selectively providing to a plurality of consumers

access to funds in an amount based upon the cash value in the consumer account associated with that consumer.

10. The system of claim 8, further including, at each merchant location, memory means for storing a credit rate selected by the merchant, transaction data input means for inputting the sale amount of the transaction, said merchant location processor means further responsive to said memory means whereby said credit value is determined in accordance with said credit rate and the amount of the transaction.

11. The system of claim 9, said unit means including a check printer whereby access to funds is by printing a check in the amount of the cash value in that consumer's account.

12. The system of claim 8 wherein the first communication means also electronically transmits and the second communication means also electronically receives, related to each transaction, merchant data associated with the merchant along with the consumer's account number and the credit value, the central system further having:

merchant account memory means for storing bill values for a plurality of merchant accounts,

each merchant account being associated with respective merchant data; and

said central system processor means further for incrementing the bill value in a merchant account associated with received merchant data by an amount corresponding to the received credit value.

13. The system of claim 12, the central system further having:

means for issuing to each merchant a bill in an amount based upon the bill value in the merchant account associated with that merchant.    ...

*14. A method of consumer cash value accumulation based upon point-of-sale transactions, each having a purchase amount, between consumers and multiple merchants, the method comprising:*

*a. at the point-of-sale, obtaining from the consumer an account number unique to the consumer;*

*b. determining a merchant-specific credit value for the transaction from a merchant-specific credit rate and the purchase amount;*

*c. electronically providing, for each transaction, at an electronic processing system the consumer's account number and the credit value; and*

*d. for each transaction, accumulating, at the electronic processing system, cash value in a consumer account associated with that consumer's account number by increasing the cash value in that consumer account in relation to the credit value.*

*15. The method of claim 14 wherein the credit value is determined by multiplying a merchant-selected credit rate by the purchase amount of the transaction.*

*16. The method of claim 15 wherein the credit value is calculated at the merchant's location and electronically transmitted to the electronic processing system.*

*17. The method of claim 14 further comprising providing a plurality of the consumers selective access to funds in their respective consumer accounts, such access being based upon the cash value accumulated in each such consumer account.*

*18. The method of claim 14 wherein the consumer account number is independent of how the consumer pays for the transaction.*

*19. The method of claim 14 further comprising, for each transaction, accumulating, at the electronic processing system, bill value in a merchant account for the merchant associated with the transaction, which bill value is in relation to the credit value for the transaction.*

Re. 36,116

9

20. The method of claim 14 wherein the electronic processing system is a single processor.

21. The method of claim 14 wherein the electronic processing system is at a central location.

22. A method of consumer cash value accumulation based upon point-of-sale transactions between consumers and multiple merchants, the method comprising:

(a) at the point-of-sale, obtaining from the consumer an account number unique to the consumer and generating data representing an amount of purchases during the transaction;

(b) determining, for each merchant, a merchant-selected credit rate;

(c) for each transaction, using (i) the consumer's account number, (ii) the generated data representing the amount of purchases, and (iii) the credit rate, to electronically determine a merchant-specific credit value for the transaction; and

(d) for each transaction, accumulating cash value in a consumer account associated with that consumer's account number by increasing the cash value in that consumer account in relation to the credit value.

23. The method of claim 22 wherein the credit value is determined by multiplying the merchant-selected credit rate by the amount of purchases during the transaction.

24. The method of claim 23 wherein the credit value is electronically transmitted to an electronic processing system.

25. The method of claim 24 wherein the electronic processing system is a single processor.

26. The method of claim 24 wherein the electronic processing system is at a central location.

27. The method of claim 22 wherein the credit value is calculated at the merchant's location.

28. The method of claim 22 further comprising providing a plurality of the consumers selective access to funds in their respective consumer accounts, such access being based upon the cash value accumulated in each such consumer account.

29. The method of claim 22 wherein the consumer account number is independent of how the consumer pays for the transaction.

30. The method of claim 22 further comprising, for each transaction, accumulating bill value in a merchant account for the merchant associated with the transaction, which bill value is in relation to the credit value for the transaction.

31. An apparatus for consumer cash value accumulation based upon point-of-sale transactions between consumers and multiple merchants comprising:

10

(a) at least one point-of-sale terminal for each merchant, each terminal structured to input a consumer account number and to generate data representing an amount of purchases during the transaction;

(b) a computer having an indexed memory sized and structured to store cash values for a multitude of consumer accounts, each account associated with a respective, unique account number, wherein said computer is coupleable to the point-of-sale terminals through an electronic communications network;

(c) at least one processor that is programmed to calculate, for each transaction, a merchant-specific credit value based on the amount of purchases and a merchant-selected credit rate; and

(d) an accumulator associated with the computer, coupled to the memory and to the processor, and structured to, for each transaction, increase, in relation to the credit value, the cash value in a consumer account associated with the account number inputted at one of the point-of-sale terminals and transmitted through the electronic communications network to the computer.

32. The apparatus of claim 31 wherein said at least one processor comprises a plurality of processors, each associated with at least one point-of-sale terminal, and each physically situated at the premises of one of the merchants.

33. The apparatus of claim 31 wherein said at least one processor is remote from the computer.

34. The apparatus of claim 33 wherein the credit value is transmitted to the accumulator through the electronic communications network.

35. A method of consumer cash value accumulation based upon point-of-sale transactions, each having a purchase amount, between consumers and merchants, the method comprising:

(a) at the point of sale, obtaining from the consumer an account number unique to the consumer;

(b) determining a merchant location, determining a credit value for the transaction from a merchant-specific credit rate and the purchase amount;

(c) electronically providing, for each transaction, from the merchant location to an electronic processing system the consumer's account number and the credit value; and

(d) for each transaction, accumulating, at the electronic processing system, cash value in a consumer account associated with that consumer's account number by increasing the cash value in that consumer account in relation to the credit value.

\* \* \* \* \*

# EXHIBIT 2

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
02/29/2008
CT Log Number 513140672

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:**   Carl Del Vecchio
         JPMorgan Chase Bank, N.A.
         1 Chase Manhattan Plaza - 20th Floor, Legal Department
         New York, NY 10081-

**RE:**   **Process Served in New York**

**FOR:**  JPMorgan Chase & Co. (Cross Ref Name) (Domestic State: N/A)
         JPMorgan Chase Bank, N.A. (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Source, Inc. // To: JPMorgan Chase Bank, N.A. |
| **DOCUMENT(S) SERVED:** | Letter |
| **COURT/AGENCY:** | None Specified<br>Case # None Specified |
| **NATURE OF ACTION:** | Intellectual Property Litigation - Patent infringement - Letter seeking to resolve dispute with regards to patent infringement |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 02/29/2008 postmarked: "Illegible" |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | David K. Anderson<br>Anderson & Cunningham<br>270 First City Tower<br>1001 Fannin Street<br>Houston, TX 77002-6799<br>713-655-8400 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/29/2008, Expected Purge Date: 03/05/2008<br>Image SOP - Page(s): 4<br>Email Notification, Legal Papers Served legal.papers.served@jpmchase.com<br>CC Recipient(s)<br>Teresa Goldberg, via Customer Pick-up |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Christopher Tilton<br>111 Eighth Avenue<br>New York, NY 10011<br>212-894-8940 |

Page 1 of  1 / SA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



## ANDERSON & CUNNINGHAM

**ATTORNEYS AT LAW**

A PROFESSIONAL CORPORATION
270 First City Tower
1001 Fannin Street
Houston, Texas 77002-6799
Telephone (713) 655-8400
FAX (713) 650-8745
www.andersonlawfirm.com

**DAVID K. ANDERSON**
BOARD CERTIFIED CIVIL TRIAL LAW
BOARD CERTIFIED CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

david@andersonlawfirm.com

February 21, 2008

JPMorgan Chase & Co.
c/o CT Corporation System
Registered Agent
111 Eighth Avenue, 13th Floor
New York, New York 10017

      RE:   Source, Inc.

Dear Madam or Sir:

I am writing on behalf of Source, Inc. ("Source") with respect to its intellectual property rights in its loyalty marketing program and consumer cash value accumulation system. Source is the owner of a number patents and other intellectual property in these areas, including:

1. United States Patent No. 4,941,090 (the '090 patent) entitled "Centralized Consumer Cash Value Accumulation System For Multiple Merchants";

2. United States Patent No. 5,117,355 (the '355 patent) entitled "Centralized Consumer Cash Value Accumulation System For Multiple Merchants";

3. United States Patent No. 5,202,826 (the '826 patent) entitled "Centralized Consumer Cash Value Accumulation System For Multiple Merchants";

4. United States Patent No. Re: 36,116 (the '116 patent, attached hereto) entitled "Centralized Consumer Cash Value Accumulation System for Multiple Merchants".

Based on our investigation, your company is infringing one or more of these patents.   In order to protect its intellectual property rights, Source has filed suit against your company and others -- Cause No. 2:08-cv-23 in the United States District Court for the Eastern District of Texas (Marshall Division).    A copy of the complaint will be provided to you upon request or at the time of service.

Source has entered into licensing arrangements with a number of market participants, and if there is interest on your part, Source would be willing to discuss a licensing

February 21, 2008
Page two

arrangement with your company as well.    Recognizing that patent infringement litigation can be expensive and time consuming, it is my practice to contact all defendants at the outset to explore the possibility of resolving the dispute at an early stage.

In keeping with that policy, someone from my office will attempt to contact you in the near future.    You may also contact me at your convenience.

Sincerely,

David K. Anderson

DKA:skp

$0.41
US POSTAGE
FIRST-CLASS
00258001041511   77002

**ANDERSON & CUNNINGHAM**
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
270 First City Tower
1001 Fannin Street
Houston, Texas 77002-6799

JPMorgan Chase & Co.
c/o CT Corporation System
Registered Agent
111 Eighth Avenue, 13th Floor
New York, New York 10017

10011+5213

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SOURCE, INC. | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 2:08-cv-23 |
| | § | |
| 1) ACCESS DEVELOPMENT CORPORATION, | § | |
| 2) BCORNER.COM, INC., | § | |
| 3) BELCARO GROUP, INC., D/B/A | § | JURY DEMANDED |
|    SHOPATHOME.COM, | § | |
| 4) BIG CO-OP, INC., | § | |
| 5) INTEGRAL TECHNOLOGIES, INC., | § | |
| 6) 77BLUE LLC, | § | |
| 7) EBATES SHOPPING.COM, INC., | § | |
| 8) ELECTRONIC SCRIP INC., | § | |
| 9) THE EZSHOPPEN COMPANY, | § | |
| 10) FATWALLET.COM, INC., | § | |
| 11) IGIVE.COM HOLDINGS, LLC, | § | |
| 12) JELLYFISH, INC., | § | |
| 13) JET SET JOE CORPORATION, | § | |
| 14) LITTLE GRAD, INC. | § | |
| 15) MBC DIRECT, LLC, | § | |
| 16) MALL NETWORKS, INC., | § | |
| 17) MISERMART.COM INC., | § | |
| 18) MEZI MEDIA, INC., | § | |
| 19) MOTHERS WORK, INC., | § | |
| 20) OC REBATES, | § | |
| 21) PINNACLE COMMUNICATIONS | § | |
|     INTERNATIONAL, INC., | § | |
| 22) QDEALS, INC., | § | |
| 23) QUICKREWARDS NETWORK, INC., | § | |
| 24) SHOP.COM, | § | |
| 25) SIMPLICITY GROUP, LLC, D/B/A/ | § | |
|     SIMPLEREBATES.COM, | § | |
| 26) SPREE.COM CORPORATION, | § | |
| 27) TRICORDIA, LLC, | § | |
| 28) TUITION FUND, LLC, | § | |
| 29) WEBLOYALTY.COM, INC., | § | |
| 30) ZIONS FIRST NATIONAL BANK, | § | |
| 31) ALLIANCE CARD, INC. | § | |
| 32) FAMILY NETWORK, INC., | § | |
|     DBA AFFINITY SOLUTIONS | § | |

| | |
|---|---|
| 33) JPMORGAN CHASE & CO. | § |
| 34) GOLDEN RETRIEVER SYSTEMS, L.L.C. | § |
| 35) SUMMIT STATE BANK | § |
| 36) NIETECH CORPORATION | § |
| 37) U.S BANCORP | § |
| 38) U.S. BANK | § |
| | § |
| | § |
| Defendants. | § |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Source, Inc. ("Plaintiff" or "Source") hereby files this Complaint and in support

thereof would show the Court the following:

### Parties

1.      Source is a Delaware corporation with its principal place of business in Newhall,

California.

2.      On information and belief, Defendant, Access Development Corporation ("Access

Development"), is a corporation having a principal place of business at 1012 W. Beardsley, Salt

Lake City, Utah 84119.  On information and belief, Access Development's agent to receive service

of process is Sherry H. Larsen, at the aforementioned address.

On information and belief, Defendant, bCorner.com, Inc. ("bCorner.com"), is a corporation

having a principal place of business at 45 West 21st Street, 5th Floor, New York, New York 10010.

On information and belief, bCorner.com's agent to receive service of process is Alastair

Onglingswan, at the aforementioned address.

On information and belief, Defendant, Belcaro Group, Inc. ("Belcaro"), is a corporation

having a principal of business at 7100 E. Belleview Avenue, Suite 208, Greenwood Village,

Colorado 80111. On information and belief, Belcaro's agent to receive service of process is Claudia

Braunstein, at the aforementioned address.

On information and belief, Defendant, BigCo-Op, Inc. (BigCo-Op), is a corporation having a principal of business at 3666 University Avenue, 3rd Floor, Riverside, California.  On information and belief, BigCo-Op's agent to receive service of process is J. Albert Sweeney, at the aforementioned address.

On information and belief, Defendant, Integral Technologies, Inc. ("Integral Technologies"), is a corporation having a principal place of business at 2451 Cumberland Pkwy, Suite 3422, Atlanta, Georgia 30339.  On information and belief, Integral Technologies' agent to receive service of process is Vincent S. Martin, Jr., at 3416 Belridge Drive, Smyrna, Georgia 30080.

On information and belief, Defendant, 77Blue LLC ("77Blue"), is a limited liability company having a principal place of business at 3370 Patricia Avenue, Los Angeles, California 90064.  On information and belief, 77Blue's agent to receive service of process is David M. Lewis, at the aforementioned address.

On information and belief, Defendant, Ebates Shopping.com, Inc. ("Ebates"), is a corporation having a principal place of business at 333 Bryant Street, Suite 250, San Francisco, California 94107.  On information and belief, Ebates' agent to receive service of process is Alessandro G. Isolani, at 604 Panoramic Way, Berkeley, California 94707.

On information and belief, Defendant, Electronic Scrip Incorporated ("Electronic Scrip"), is a corporation having a principal of business at 1810 Gateway Drive, Suite 380, San Mateo, California 94404.  On information and belief, Electronic Scrip's agent to receive service of process is Scott Adams, at 415 Aragon Boulevard, San Mateo, California 94402.

On information and belief, Defendant, The Ezshoppen Company (Ezshoppen"), is a corporation having a principal place of business at 6309 Straw Acres Road, Spring Grove, Pennsylvania 17362. On information and belief, Ezshoppen's agent to receive service of process is

Walter Oakhem or Michael J. Sterner, at the aforementioned address.

On information and belief, Defendant, FatWallet.com, Inc. ("FatWallet"), is a corporation having a principal place of business at 8900 North 2nd Street, Machesney Park, Illinois 61115. On information and belief, FatWallet's agent to receive service of process is Craig P. Thomas, at 2902 McFarland Road, Suite 400, Rockford, Illinois 61107.

On information and belief, Defendant, iGive.com Holdings, L.L.C. ("iGive.com"), is a corporation having a principal place of business at 2859 Central Avenue, Evanston, Illinois 60201. On information and belief, iGive.com's agent to receive service of process is Robert Grosshandler, at the aforementioned address, or at 2724 Simpson Street, Evanston, Illinois 60201.

On information and belief, Defendant, JellyFish, Inc. ("JellyFish"), is a corporation having a principal place of business at 1600 Aspen Commons, Suite 950, Middleton, Wisconsin 53562. On information and belief, JellyFish's agent to receive service of process is Mark J. McGuire, at 8010 Exceksuir Drive, Suite 101, Madison, Wisconsin 53717.

On information and belief, Defendant, Jet Set Joe Corporation ("Jet Set Joe"), is a corporation having a principal place of business at 909 Prospect Street, Suite 224, La Jolla, California 92037. On information and belief, Jet Set Joe's agent to receive service of process is Alexander Burbanck, at 1311 La Palma, #2, San Diego, California 92109.

On information and belief, Defendant, Little Grad, Inc. ("Little Grad"), is a corporation having a principal of business at 337 Beach Road, Burlingame, California 94010. On information and belief, Little Grad's agent to receive service of process is Ann Vasquez, at 3812-B 24th Street, San Francisco, California 94114.

On information and belief, Defendant, MBC Direct, LLC ("MBC Direct"), is a limited liability company having a principal place of business at 2100 West Loop South, Suite 610, Houston,

Texas 77027. On information and belief, MBC Direct's agent to receive service of process is Jennifer Mahar, at the aforementioned address.

On information and belief, Defendant, Mall Networks, Inc. ("Mall Networks") is a corporation having a principal place of business at One Militia Drive, Lexington, Massachusetts 02421. On information and belief, Mall Networks' agent to receive service of process is David L. Andre, at 268 South Great Road, Lincoln, Massachusetts 01773.

On information and belief, Defendant, Misermart.com Inc. ("Misermart"), is a corporation having a principal place of business at 8514 Raybluff Lane, Houston, Texas 77040. On information and belief, Misermart's agent to receive service of process is Steve P. Sutton (Registered Agent, President and Director), at the aforementioned address, or Scott Winski (Vice-President and Director) at the aforementioned address.

On information and belief, Defendant, Mezi Media, Inc. ("Mezi Media"), is a corporation having a principal place of business at 103 E. Lemon Avenue, Suite 200, Monrovia, California 91016. On information and belief, Mezi Media's agent to receive service of process is Harry Tsao, at 591 N. Altavista Avenue, Monrovia, California.

On information and belief, Defendant, Mothers Work, Inc. ("Mothers Work"), is a corporation having a principal of business at 456 N. 5th Street, Philadelphia, Pennsylvania 19123. On information and belief, Mothers Work's agent to receive service of process is Rebecca Matthias, at 1300 Noble Street, 5th Floor, Philadelphia, Pennsylvania 19123.

On information and belief, Defendant, OC Rebates, is a corporation having a principal place of business at 1641 E. 17th Street, Suite B-129, Santa Ana, California 92705. Source has not yet identified OC Rebate's agent for service of process.

On information and belief, Defendant, Pinnacle Communications International, Inc.

5

("Pinnacle Communications"), is a corporation having a principal place of business at 9116 Cypress Green Drive, Suite 116, Jacksonville, Florida 32256. On information and belief, Pinnacle Communications' agent to receive service of process is Levine A. Williams at the aforementioned address.

On information and belief, Defendant, QDeals, Inc. ("QDeals"), is a corporation having a principal place of business at 10011 Allyson Park Drive, Charlotte, North Carolina 28277. On information and belief, QDeals' agent to receive service of process is Kausik Chaudhuri at the aforementioned address.

On information and belief, Defendant, QuickRewards Network, Inc. ("QuickRewards"), is a corporation having a principal place of business at 2203 E. 27th Street, Brooklyn, New York 11229. On information and belief, QuickRewards' agent to receive service of process is c/o Secretary of State of New York, Division of Corporations, at 41 State Street, Albany, New York 12231.

On information and belief, Defendant, Shop.com, is a corporation having a principal place of business at 1 Lower Ragsdale Drive, Building 1, Suite 210, Monterey, California 93940. On information and belief, Shop.com's agent to receive service of process is Julie R. Culver at the aforementioned address.

On information and belief, Defendant, Simplicity Group, LLC, D/B/A SimpleRebates.com ("SimpleRebates.com"), is a limited liability company having a principal place of business at 2250 North University Parkway, Suite No. 4894, Provo, Utah 84604. On information and belief, SimpleRebates.com's agent to receive service of process is Adam K. Wilkinson at the aforementioned address.

On information and belief, Defendant, Spree.com Corporation ("Spree.com"), is a corporation having a principal place of business at 1155 Phoenixville Pike, Park Valley, Suite 103,

West Chester, Pennsylvania 19380. On information and belief, Spree.com's agent to receive service of process is Michael P. Dever at the aforementioned address.

On information and belief, Defendant, Tricordia, LLC ("Tricordia"), is a limited liability company having a principal place of business at 147 West Election Road, Suite 200, Salt Lake City, Utah 84020. On information and belief, Tricordia's agent to receive service of process is John Sideles, at the aforementioned address, or at 67 Holly Hill Lane, Greenwich, CT 06830. In the alternative, Tricordia may be served with process through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

On information and belief, Defendant, TuitionFund, LLC ("TuitionFund"), is a limited liability company having a principal place of business at 151 Chickering Meadows, Suite 1F, Nashville, Tennessee 37215. On information and belief, TuitionFund's agent to receive service of process is Kevin H. Douglas, at 424 Church Street, Suite 2000, Nashville, Tennessee 37219.

On information and belief, Defendant, Webloyalt.com, Inc. ("Webloyalty"), is a corporation having a principal place of business at 101 Merritt 7, 7th Floor, Norwalk, Connecticut 06851. On information and belief, Webloyalty's agent to receive service of process is c/o Secretary of the State of Connecticut, at 30 Trinity Street, Hartford, Connecticut, 06106.

On information and belief, Defendant, Zions First National Bank, a subsidiary of Zions Bancoorporation. ("Zions"), is a national banking association having a principal place of business at One South Main Street, Salt Lake City, Utah 84111. On information and belief, Zions' agent to receive service of process is Corporation Service Company, at 2180 South 1300 East, Suite 650, Salt Lake City, Utah 84106.

On information and belief, Defendant, Alliance Card, Inc. ("ACI"), is a corporation having a principal place of business at 406 Gateway Boulevard, Burnsville, Minnesota 55337. On

information and belief, ACI's agent to receive service of process is Michael Bouchey at the aforementioned address.

On information and belief, Defendant, Family Network, Inc. ("Family Network"), doing business as Affinity Solutions, is a corporation having a principal place of business at 350 Fifth Avenue, Suite 2212, New York, New York 10118. On information and belief, Family Network's agent to receive service of process is Jonathan Silver at the aforementioned address.

On information and belief, Defendant, JPMorgan Chase & Co. ("JPMorgan Chase"), is a national banking association having a principal place of business at 270 Park Avenue, New York, New York 10017. On information and belief, JPMorgan Chase's agent to receive service of process is CT Corporate System, at 111 Eighth Avenue, 13th Floor, New York, New York 10017.

On information and belief, Defendant, Golden Retriever Systems, L.L.C. (Golden Retriever"), a wholly-owned subsidiary of Total Systems Services, Inc. ("TSYS"), is a limited liability company having a principal of business at 8320 South Hardy Drive, Tempe, Arizona 85248. On information and belief, Golden Retriever's agent to receive service of process is Corporation Service Company, at 2338 West Royal Palm Road, Suite J, Phoenix, Arizona 85021.

On information and belief, Defendant, Summit State Bank, is a bank organized under the laws of the State of California having its principal place of business at 500 Bicentennial Way, Santa Rosa, California 95403. On information and belief, Summit State Bank's agent to receive service of process is Terrance Davis at the aforementioned address.

On information and belief, Defendant, Nietech Corporation ("Nietech"), is a corporation having a principal place of business at 110 Stony Point Road, Suite 115, Santa Rosa, California 95401. On information and belief, Nietech's agent to receive service of process is Larry Roberts at the aforementioned address.

8

On information and belief, Defendants, U.S. Bancorp and its subsidiary U.S. Bank, are national banking associations having a principal place of business at 800 Nicollet Mall, Minneapolis, Minnesota 55402. On information and belief, U.S. Bancorp's agent to receive service of process is Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## Jurisdiction

3.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).

4.      On information and belief, each of the Defendants has solicited business in the state of Texas, transacted business within the state of Texas and attempted to derive financial benefit from residents of the state of Texas directly related to the instant patent infringement cause of action set forth herein. Further, on information and belief, venue is proper in this judicial district pursuant to 28 U.S.C. §1391(c) and §1400(b) because acts constituting infringement have occurred in this judicial district.

## Background

5.      On July 10, 1990, United States Patent No. 4,941,090 (the '090 patent) entitled "Centralized Consumer Cash Value Accumulation System For Multiple Merchants" was duly and legally issued to Patrick D. McCarthy and which patent is now exclusively licensed to Source. Source has the sole right to bring all actions for infringement of the '090 patent and recover all damages for infringement of this patent.

6.      On May 26, 1992, Unites States Patent No. 5,117,355 (the '355 patent) entitled "Centralized Consumer Cash Value Accumulation System For Multiple Merchants" was duly and legally issued to McCarthy and which is now exclusively licensed to Source. Source has the sole

right to bring all actions for infringement of the '355 patent and recover all damages for infringement of this patent.

7.    On April 13, 1993, United States Patent No. 5,202,826 (the '826 patent) entitled "Centralized Consumer Cash Value Accumulation System For Multiple Merchants" was duly and legally issued to McCarthy and which is now exclusively licensed to Source.  Source has the sole right to bring all actions for infringement of the '826 patent and recover all damages for infringement of this patent.

8.    On February 23, 1999, United States Patent No. Re: 36,116 (the '116 patent, attached hereto) entitled "Centralized Consumer Cash Value Accumulation System for Multiple Merchants" was duly and legally issued to McCarthy and which is now exclusively licensed to Source.  Source has the sole right to bring all actions for infringement of the '116 patent and recover all damages for infringement of this patent.

9.    On information and belief, each of the Defendants owns, operates and is otherwise responsible for the following cards and associated reward, rebate and/or loyalty programs:

- "Access Rewards", operated by Access Development.

- "bCorner", operated  by bCorner.com.

- "ShopAtHome.com Cash Back Program", operated by Belcaro.

- "Bigcoop.com", operated by BigCo-Op.

- "BigCrumbs.com", operated by Integral Technologies.

- "Cashbaq Shopping Rewards Program", operated by 77Blue.

- "Ebates Shopping Cash Back Rewards Program", operated by Ebates.

- "eScrip Program", operated by Electronic Scrip.

- "Ezshopsave Shopping Rebate Program", operated by Ezshoppen.

10

- "FatWallet Cash Back Program", operated by FatWallet.

- "iGive.com", operated by iGive.com.

- "JellyFish.com Cash Back Service", operated by JellyFish.

- "Jet Set Joe", operated by Jet Set Joe.

- "Little Grad", operated by Little Grad.

- "MBC Direct Online Mall", MBC Direct Loyalty Program", operated by MBC Direct.

- "Mall Networks", operated by Mall Networks.

- "MiserMoney Rebate Program", operated by MiserMart.

- "MoreRebates", operated by Mezi Media.

- "FutureTrust Program", operated by Mothers Work.

- "One Click Rebates", "myBestRewards.com", operated by OC Rebates.

- "ShopZero", operated by Pinnacle Communications.

- "QDeals.com", operated by QDeals.

- "QuickRewards", operated by QuickRewards.

- "Shop.com Cares Program", operated by Shop.com.

- "SimpleRebates", operated by SimpleRebates.com.

- "Spree.com", operated by Spree.com.

- "Tricordia", operated by Tricordia.

- "Tuition Fund", operated by TuitionFund.

- "Shopper Discounts & Rewards Program", "Savings Key Software", operated by Webloyalty.

11

- "Zions Cash Rewards Program", operated by Zions.

- "SmartTown Alliance Program" / "Cash Value Card Alliance", operated by ACI.

- "Affinity Rewards Program", operated by Affinity Solutions.

- "Chase Freedom Credit Card", operated by JPMorgan Chase.

- "Golden Retriever Systems", operated by Golden Retriever.

- "COMMUNITYsmart card", operated by Summit State Bank.

- "COMMUNITYsmart program", operated by Nietech.

- "U.S. Bank Cash Rewards Program", operated by U.S. Bank.

The aforementioned reward, rebate and/or loyalty programs, and similar programs whose identities are not yet known, will hereafter be collectively referred to as the "Accused Instrumentalities." On information and belief, the Accused Instrumentalities utilize and practice the claimed inventions in the '116 patent.

### Defendants' Infringement

10.    Source incorporates by reference, paragraphs 1-9 herein.

11.    On information and belief, each of the Defendants, through its Accused Instrumentalities, has and/or is currently infringing, contributorily infringing, and/or actively inducing the infringement of the '116 patent by making, using, selling, offering for sale and/or selling within this judicial district and elsewhere in the United States, without license or authority from Source, hardware, processes and methods that practice the inventions claimed in the '116 patent.

12.    On information and belief, each of the Defendants' misappropriation of Plaintiff's inventions through infringement of the '116 patent has been willful and deliberate. On information

and belief, each of the Defendants will continue its infringing activities and will continue this unlawful conduct unless restrained by this Court.

13.    On information and belief, Defendants' appropriation of the inventions through infringement of the '116 patent has allowed Defendants to gain substantial market share in the customer loyalty, rebate and rewards and member services market and to reap unjustified profits. Defendants' infringement has caused and will continue to cause irreparable harm to Source.

14.    As a result of this unlawful behavior, Source has been damaged and will continue to be damaged by Defendants' infringement of the '116 patent.

## Demand for Jury Trial

15.    Source respectfully demands a trial by jury for all claims alleged herein.

## Prayer

16.    Source respectfully prays for and asks the Court to find and enter judgment as to the following:

A)    That this Court adjudge that United States Patent No. Re 36,116 is valid and that each of the Defendants is and has infringed the patent by direct infringement under 35 U.S.C. § 271(a), contributory infringement under 35 U.S.C. §271(c) and/or by inducing infringement under 35 U.S.C. §271(b) as claimed in the Complaint;

B)    That Source be awarded under 35 U.S.C. §284, in an amount to be proven at trial, damages adequate to compensate Source for Defendants' infringement of the '116 patent;

C)    That Source be awarded its costs and prejudgment interest on its damages, as provided for by 35 U.S.C. §284;

D)    That this court enter a preliminary and permanent injunction against each of the Defendants and all of its officers, agents, affiliates, servants, employees, and attorneys, and

all other persons in active concert or participation with them, against further infringement, inducing infringement, and/or contributing to the infringement of the '116 patent;

E)    An accounting be had for the damages to Source arising out of Defendants' infringing activities, together with interest and costs and that such damages be awarded to Source;

F)    That each of the Defendants be adjudged a willful infringer and that the damages to Source be increased under 35 U.S.C. §284 to three (3) times the amount found or measured;

G)    An award of attorney fees to Plaintiff under 35 U.S.C. §285;

H)    That each of the Defendants be ordered to make a written report within a reasonable period, to be filed with the Court, detailing the manner of their compliance with the requested injunction; and

I)    That Plaintiff be entitled to such other and further relief as the Court may deem appropriate.

DATED:    January 24, 2008                    Respectfully submitted,


                                             /s/ David K. Anderson
                                             David K. Anderson
                                             Texas Bar No. 01174100
                                             ANDERSON & CUNNINGHAM, P.C.
                                             1001 Fannin, Suite 270
                                             Houston, TX 77002
                                             713-655-8400 Telephone
                                             713-650-8745 Fax

                                             B. Todd Patterson
                                             Texas Bar No. 00789537
                                             Henry M. Pogorzelski
                                             State Bar No. 24007852
                                             PATTERSON & SHERIDAN, L.L.P.
                                             3040 Post Oak Blvd., Suite 1500
                                             Houston, TX 77056
                                             713-623-4844 Telephone
                                             713-623-4846 Fax

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on this the 24th day of January, 2008.


/s/ David K. Anderson

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CHASE BANK USA, N.A.

**DEFENDANTS**

SOURCE, INC.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Philip A. Rovner, Esq. (#3215) Potter Anderson & Corroon LLP
P.O. Box 951, Wilmington, DE 19899 (302) 984-6000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sections 2201 and 2202 and patent laws of the United States, 35 U.S.C. Section 1, et seq.

Brief description of cause:
suit for declaratory judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 8-20-08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box ·1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: <u>47 USC 553</u><br>Brief Description: <u>Unauthorized reception of cable service</u>

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____2____ COPIES OF AO FORM 85.

_____8/20/08_____
(Date forms issued)

X _____
(Signature of Party or their Representative)

X _____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action